TAYLOR *v.* TAYLOR.

SAME *v.* MULAVEY.

1. GIFTS—INTER VIVOS—DELIVERY—SAFE DEPOSIT BOX.

Decedent, father of adult defendants and late husband of plaintiff, a wife by second marriage, who had placed his home and bank account in joint name of plaintiff and himself, did not effect a valid gift *inter vivos* or *causa mortis* of money by placing it in marked envelopes in safe deposit box to which both he and one of the defendants had access and while en route to place where he apparently committed suicide mailed his key to himself at home address, since he did not place the money beyond his control and testimony does not indicate decedent had any conversation with any of the defendants relative to the particular gifts.

2. TRUSTS—EX MALEFICIO—INCOMPLETED GIFTS.

In suits by administratrix of estate of her late husband against his adult children by a former marriage to recover money of which they had obtained possession and claimed as a gift from their father, where decedent is not shown to have effected a gift, plaintiff is entitled to have each declared a trustee *ex maleficio* of such part of the moneys which can be located in possession of respective defendants or traced into property under their control.

3. APPEAL AND ERROR—ALTERNATIVE RELIEF—REMAND FOR TAKING FURTHER TESTIMONY—MONEY DECREE IN SUPREME COURT.

On reversal of decree dismissing bill of complaint in suit by administratrix of estate of decedent who had failed to effectuate gifts of money to his children by a former marriage, plaintiff is given option of remanding case for taking further testimony for purpose of tracing assets or of taking a money decree in this court.

Appeal from Wayne; Moll (Lester S.), J. Submitted October 6, 1939. (Docket Nos. 88–90, Calendar Nos. 40,768–40,770.) Decided February 14, 1940.

Separate bills by Effie Taylor, administratrix of the estate of Robert Taylor, deceased, against Norvert Taylor, Victor J. Taylor, and Genevieve Mulavey for an injunction, to trace money, to have money declared a trust fund, and for other relief. Cases consolidated for trial and appeal. Bills dismissed. Plaintiff appeals. Reversed.

*Wm. Henry Gallagher* (*S. Reymont Paul*, of counsel), for plaintiff.

*Theron M. Hall*, for defendants.

NORTH, J. Decision in these cases turns upon whether there was a fully consummated gift by the plaintiff's decedent to the defendants of certain sums of money which were removed from a safe deposit box by defendant Norvert Taylor under the circumstances hereinafter detailed. Plaintiff, as the administratrix of the estate of Robert Taylor, deceased, in the respective bills of complaint seeks recovery on the theory that such a gift was not consummated. After hearing upon the merits, the circuit judge held against plaintiff's contention and entered decree dismissing the bills of complaint. In each case plaintiff has appealed; and the controversy has been submitted on one record in this court.

On April 15, 1938, Robert Taylor withdrew from the Ford Motor Company approximately $2,700 which he then had on deposit with the investment department of the company. During the forenoon of the same day he went to a safe deposit box in the Penobscot building in Detroit and placed in the box three envelopes each containing $896. On one of these he wrote "Norvert Taylor;" on another "Dr. V. J. Taylor care of Norvert;" and on the third "Genevieve Mulavey care of Norvert." On the same day he wrote and mailed in Detroit about noon a

postcard to his wife, the plaintiff administratrix herein, as follows: ''Dear Effie: Will not be home over the week-end; going north. Bob.'' So far as appears from this record, excepting a birthday card mailed to one of the defendants April 16th from Montreal, nothing further was known of the whereabouts of plaintiff's decedent until his body was found in the municipality of Contrecoe, Province of Quebec, on June 3, 1938. It seems to be conceded in the record that decedent committed suicide by drowning.

On Saturday, April 16th, there was received through the mail at decedent's residence his keys, the same having attached to them a tag addressed to decedent at his home theretofore occupied by himself, the administratrix and the defendant Norvert Taylor. One of the keys was decedent's key to the safe deposit box. The defendant Norvert Taylor had rented this box and he also had a key and access to the box. Both Mrs. Effie Taylor and Norvert Taylor seemed to have had knowledge of the arrival of decedent's keys at his home, and thereafter on the same day Norvert Taylor went to the safe deposit box, found therein and removed therefrom the three envelopes containing the money above mentioned. He disclosed this fact to each of the other defendants, but he testified that he retained possession of the envelopes for a week or ten days. He testified in substance that his purpose in retaining the envelopes was to enable him to return them to his father in the event of his return; and stated he would have done so if such was his father's desire, saying in this connection: ''At that time I deemed the money was mine. * * * I felt bound to take care of my dad whether with that money or with any other money.'' Later each of the defendants received and retained the contents of one of the envelopes.

While not particularly controlling of decision herein, it may be noted as part of the factual background that defendants are the adult children of decedent by a former marriage, and that Effie Taylor, plaintiff administratrix, was the wife of decedent by a second marriage consummated approximately two years prior to his death. Subsequent to this marriage decedent placed the title to the home property in himself and his wife as tenants by the entirety, and he also placed his bank account jointly in both their names.

Plaintiff's contention that the money left by decedent in the safe deposit box should be held to belong to his estate is based upon the claim that a consummated gift either *inter vivos* or *causa mortis* was not established in that the record discloses decedent did not part with control of the subject matter of the gift or make effective delivery thereof, either actual or constructive, to the donees. Under the record before us, appellant's contention must be sustained.

By placing the money in marked envelopes in the safe deposit box to which both decedent and his son Norvert had access, the former did not put the money beyond his control; and hence there was an absence of such delivery as is essential to the consummation of a valid gift. The only other pertinent act on the part of Robert Taylor was the mailing of his own keys (including his key to the safe deposit box) to himself at his own home. But in doing that he did not effect a constructive or symbolic delivery of the alleged gifts. Had he returned he would have been entitled to his keys and the right to have the money left by him in the safe deposit box. His suicidal death which was discovered weeks later does not alter the legal aspect of the case. Nor does the fact that in the meantime the son who had access to the safe deposit box had removed the envelopes therefrom and

had delivered or "handed" one of the envelopes to each of the other defendants who thereupon returned it to him. Mr. Robert Taylor never made delivery of the money to any of his children, and hence a valid gift was not effected. The above conclusion is necessitated by the law of this State as definitely settled in the following cases: *Holmes* v. *McDonald,* 119 Mich. 563 (75 Am. St. Rep. 430) ; *Shepard* v. *Shepard,* 164 Mich. 183 ; *In re Van Wormer's Estate,* 255 Mich. 399 ; and *Geisel* v. *Burg,* 283 Mich. 73. Decision of a case strikingly similar in facts will be found in *Chambers* v. *McCreery,* 98 Fed. 783.

In reaching our conclusion we are mindful of Norvert Taylor's testimony:

"My father had told me that he would leave what there was for us, or what instructions, what he wanted me to do with his money or property or whatever it would be, would be there (in the deposit box)."

There was testimony of like character by defendant Genevieve Mulavey; but even such statements did not, under the facts disclosed by this record, suffice to constitute delivery requisite to a valid gift. And in this connection it should be noted that neither of these witnesses had a conversation with their father relative to the particular alleged gifts here in suit. Norvert Taylor testified:

"Relative to these particular envelopes or their contents, I had no conversation with my father at any time prior to his disappearance."

In her amended bill of complaint in each case plaintiff alleged:

"That plaintiff is informed and believes that said defendant is in possession of the moneys or the equivalent of property into which said moneys have been converted."

Her prayer for relief contains the following:

"That said moneys be declared a trust fund, and the defendant a trustee thereof."

The trial judge seems to have held that even if plaintiff prevailed the extent of relief would be a money decree. In her behalf it is urged on this appeal that "the trial judge failed to differentiate between an action to recover a money judgment and a suit to establish and trace trust funds."

The record pertaining to this phase of the appeal is decidedly unsatisfactory. It is difficult to determine whether or not the examination of witnesses, particularly Norvert Taylor and Dr. Victor J. Taylor, was permitted to the full extent to which plaintiff was entitled. On cross-examination by plaintiff's counsel, Norvert Taylor testified:

"I specifically recall that the moneys in my envelope going into my commercial account. * * * Some time after I came back from Montreal the first trip. I have my bank book at home. * * *

"Q. There isn't anything you own in this world?
"A. Clothes.
"Q. Except your personal belongings?
"A. That is all.
"Q. You use this money for living expenses?
"A. I guess so."

Thereupon plaintiff's counsel asked the witness to produce in court his bank book, cancelled checks, and statements of his account. The witness declined to do so unless ordered by the court. The court declined to so order, advising counsel that if he wanted such records he should have used a subpoena *duces tecum*.

Plaintiff's counsel also cross-examined defendant Dr. Victor J. Taylor. And concerning the contents of the envelope delivered to him, he said: "I dis-

posed of the money. * * * I don't know exactly what I did with every dollar of it. I can't answer the question."

At this point in the trial of the case the circuit judge ruled:

"I will rule it is immaterial what he did with the money provided what he received hasn't been paid to the estate. That will be my ruling with reference to all three defendants."

Later the defendant Genevieve Mulavey was called as a witness and the ruling just above noted was adhered to.

While it is quite apparent in view of the above record that no practical results will be obtained by plaintiff in prosecuting further the matter of discovery, still we think under the record in this case she was entitled to full examination of each of the defendants looking towards the location and identification of the moneys or any portion thereof which we hold are a part of the Taylor estate. If these moneys, or any part thereof, can be located in the possession or under the control of any of defendants, or if they have property into which the same has gone, we think to that extent plaintiff is entitled to have such defendant declared a trustee *ex maleficio* and to have appropriate relief decreed.

The decree entered in the circuit court will be reversed. At appellant's option the case will be remanded for the taking of further testimony in the circuit court for the entering of a decree thereafter in that court in accordance herewith; or in lieu of the foregoing appellant may have a money decree entered in this court in accordance herewith. Plaintiff will have costs of both courts.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, McALLISTER, WIEST, and BUTZEL, JJ., concurred.